# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LESLIE SALVAGE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF OMAHA, a Political Subdivision of the State of Nebraska; and CITY OF OMAHA CITY COUNCIL, <br><br> Defendants. | 8:18CV376 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Issuance of Preliminary Mandatory Injunction, ECF No. 11, and the Motion for Oral Argument and Evidentiary Hearing,[1] ECF No. 21, filed by Plaintiff Leslie Salvage, Inc. ("Leslie Salvage"). Leslie Salvage asks the Court to issue a preliminary injunction compelling Defendants, the City of Omaha ("the City") and City of Omaha City Council ("the City Council"), to issue a fence permit and certificate of occupancy to Leslie Salvage. For the reasons stated below, the Motions will be denied.

## BACKGROUND

The following factual summary is based on Leslie Salvage's pleadings, brief, and evidentiary submissions.

Leslie Salvage operated a salvage and recycling facility in downtown Omaha since 1989. Leslie Aff., ECF No. 14-1, Page ID 142-43. In early 2016, after being pressured by

---

[1] Leslie Salvage suggests that the action's complex facts and the interplay of city ordinances, regulations, and state law regarding zoning, merit an oral argument and an opportunity for the Court to ask questions of counsel. The Court concludes that no hearing is needed.

the City to move, the owner and president of Leslie Salvage, David Leslie ("Leslie"), found a property he believed was suitable for his salvage and recycling facility. *Id.* at 143. The property was located at 6202 Orchard Avenue ("the Orchard Property"). *Id.*

On August 8, 2016, Leslie Salvage applied to relocate its special use permit. *Id.* The application to the City of Omaha Planning Department ("Planning Department") included an initial site plan drafted by Jason Theillen of E&A Consulting Group, Inc. *Id.* at 143-44. The initial site plan showed access onto the Orchard Property that encroached on an adjacent property known as 6202 Q Street ("the Q Street Property"). *Id.* Theillen drafted the plan with the mistaken belief that an access agreement existed between the previous owners of the Orchard Property and the owners of the Q Street Property. *Id.* at 144, 146.

On August 31, 2016, after reviewing the application and initial site plan, the Planning Department issued a Recommendation Report recommending approval of a special use permit subject to several additional conditions. *Id.* at 144; Recommendation Report, ECF No. 14-1, Page ID 161-62. The conditions included a revised site plan illustrating perimeter fencing acceptable to the Planning Department, and a handicap accessible parking space. Recommendation Report, ECF No. 14-1, Page ID 161-62. Leslie Salvage was also required to obtain a waiver of Omaha Municipal Code § 55-766(b) from the Zoning Board of Appeals ("the Zoning Board").[2] *Id.* After the September 7, 2016, public hearing, the City of Omaha Planning Board ("Planning Board")

---

[2] Omaha Municipal Code § 55-766(b) requires 300 feet of separation between scrap and salvage services and agricultural, residential, and office zoning districts. *Id.*

2

recommended approval of the special use permit subject to the additional conditions contained in the Recommendation Report. Leslie Aff., ECF No. 14-1, Page ID 144-45.

On October 17, 2016, a Zoning Board public meeting was held at Leslie Salvage's request for a waiver of Omaha Municipal Code § 55-766(b). *Id.* at 146. At the meeting, Matt Dowd, representing Duane Dowd ("Dowd"), one of the owners of the Q Street Property, raised concerns about the shared access off Orchard Avenue shown in the initial site plan. *Id.* at 146. Kyle Haase of E&A Consulting, representing Leslie Salvage, informed the Zoning Board that Leslie Salvage originally believed there was a shared access agreement between the Q Street Property and the Orchard Property, but there was no such agreement. Zoning Board Agenda, ECF No. 14-1, Page ID 180. Haase represented that Leslie Salvage was willing to work with Q Street Property owners to create an easement or find another way to access the Orchard Property. *Id.* The Zoning Board approved the waiver and encouraged the parties to work together on a solution before the issue reached the City Council. *Id.*

On November 30, 2016, the Orchard Property was transferred to Leslie Salvage by warranty deed. Leslie Aff., ECF No. 14-1, Page ID 143.

On January 10, 2017, in a letter to the City Council, the Planning Department recommended approval of a resolution authorizing a special use permit for the Orchard Property. *Id.* at 147. Public hearing before the City Council was set for January 24, 2017. *Id.* Before the hearing, Thiellen reached out to Dowd to discuss an access easement and sent him an email outlining the proposed terms. *Id.* Leslie did not authorize Thiellen to make the proposal and when Thiellen showed Leslie the proposal, just before the hearing, Leslie informed Thiellen it was not feasible. Leslie Aff., ECF No. 14-1, Page ID 148-49.

Thiellen told Leslie he would draft a revised site plan addressing Leslie's concerns after the hearing. *Id.* at 149.

At the hearing, Thiellen stated "As an update to precouncil this morning, we have worked out any issues that we had previously with the south property owner in terms of access to the property." First City Council Meeting Tr., ECF No. 23, Page ID 304. City Council member Garry Gernandt stated "thanks also goes to the applicant and the neighbors that abut this particular area, for sitting down and working through what they believe was some consequence to them. And it sounds like everybody now has seen the light to at least a 60-watt bulb - -." *Id.* at 306. Thielen responded "that's right" and Gernandt continued "- -and can agree that the - - this could go forward." *Id.* Thielen did not present any additional information regarding the alleged agreement to the City Council. *Id.* at 303-10. The City Council approved the special use permit. *Id.* at 310.

After approval of the special use permit, Leslie Salvage began to construct a perimeter fence on the Orchard Property. Leslie Aff., ECF No. 14-1, Page ID 150. The City directed Leslie Salvage to cease construction because no fence permit was issued. *Id.* The permit was denied because the fence did not comply with the initial site plan. *Id.* The City also refused to issue Leslie Salvage a certificate of occupancy. *Id.*

In February 2018, Leslie Salvage had to cease operations at its downtown Omaha facility, because it sold the property. *Id.* In March 2018, John Meng-Frecker designed a revised site plan for Leslie Salvage which incorporated a perimeter fence and access to the Orchard Property that did not encroach on the Q Street Property. *Id.*; Meng-Frecker Plan, ECF No. 14-1, Page ID 199. The revised site plan was submitted to the Planning Department for review and approval. Leslie Aff., ECF No. 14-1, Page ID 150. In a May 8,

4

2018, letter to the City Council, the Planning Department recommended the City Council adopt an amendment to the special use permit to include the revised site plan. *Id.* at 150-51. All other necessary conditions and criteria for the special use permit were previously met or Leslie Salvage was ready and willing to meet them. *Id.*

At the May 22, 2018, City Council hearing Dowd appeared and argued that the amendment to the special use permit should not be granted because the revised site plan did not incorporate the alleged shared access agreement between the parties. *Id.* at 151. Dowd expressed concerns about the revised site plan stating if "they put the fence I think in the middle of Orchard Street. I'm not sure I've got that. It might be just too close to Orchard Street." Second City Council Meeting Tr., ECF No. 14-2, Page ID 221. The vote on the resolution was delayed until the June 19, 2018, meeting to allow Dowd and Leslie time to come to an agreement. *Id.* at 224. At the June 19, 2018, pre-council meeting the City Council was informed that the parties had not reached an agreement. *Id.* at 226. At the June 19, 2018, meeting no further public hearing was held and the City Council voted not to adopt the amendment to the special use permit. *Id.* at 227. The amendment was denied again on reconsideration. Leslie Aff., ECF 14-1, Page ID 151-52.

On July 19, 2018, Leslie Salvage filed its Complaint in the District Court of Douglas County, Nebraska. Defendants removed the action to this Court and an Amended Complaint was filed. In the Amended Complaint, ECF No. 8, Leslie Salvage appeals the decision of the City Council denying the new special use permit and seeks a permanent injunction. Leslie Salvage also alleges a violation of substantive due process and equal protection rights under 42 U.S.C. § 1983.

Leslie Salvage filed a Motion for Issuance of Preliminary Mandatory Injunction, ECF No. 11, asking the Court to issue a temporary restraining order and a preliminary injunction compelling the City Council and City of Omaha to issue a fence permit certificate of occupancy pursuant to the revised site plan. Leslie Salvage also requested waiver of the bond requirement. This Court denied Leslie Salvage's request for temporary restraining order. M&O, ECF No. 15. For the reasons discussed below, Leslie Salvage's Motion for preliminary injunction will also be denied.

**DISCUSSION**

**I. Motion for Preliminary Injunction**

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*), when determining whether to issue a preliminary injunction or temporary restraining order.  Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008).  "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59

F.3d 80, 83 (8th Cir.1995)). With respect to this factor, it is not necessary for the movants to prove they are more likely than not to prevail, the movants need only show a reasonable probability of success, that is, a fair chance of prevailing on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113. Leslie Salvage must demonstrate it is likely to succeed on its substantive due process claim, equal protection claim, or its appeal from the decision of the from the City Council's decision to deny the amendment to the special use permit.[3]

### A. Substantive Due Process

"To prevail on a substantive due process claim, plaintiff must first establish 'a protected property interest to which the Fourteenth Amendment's due process protection applies,'" *Bituminous Materials, Inc. v. Rice Cty., Minn.*, 126 F.3d 1068, 1070 (8th Cir. 1997) (quoting *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995)), "and then demonstrate that the government action complained of is 'truly irrational, that is something more than … arbitrary, capricious, or in violation of state law,'" *Snaza v. City of Saint Paul, Minn.*, 548 F.3d 1178, 1183 (8th Cir. 2008) (quoting *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006)). Leslie Salvage's substantive due process claim is not likely to succeed because Leslie Salvage has not demonstrated that it possessed a protected property interest or that Defendants' actions were truly irrational.

#### 1. Protected Property Interest

"To have a constitutionally cognizable property interest in a right or a benefit, a person must have a legitimate claim of entitlement to it." *McGuire v. Indep. Sch. Dist. No.*

---

[3] Leslie Salvage appeals the decision of the City Council by way of a petition in error pursuant to Neb. Rev. Stat. § 14-813.

*833*, 863 F.3d 1030, 1034 (8th Cir. 2017) (quoting *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (internal quotations omitted). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "But 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005)). "[A] state statute ... can create a constitutionally protected property interest, first, when it contains particularized substantive standards that guide a decision maker and, second, when it limits the decision maker's discretion by using mandatory language (both requirements are necessary)." *Id.* (quoting *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999)).

Although Leslie Salvage argues it has a protected property interest in both the original special use permit and the amendment to it, including the revised site plan, the Court cannot conclude that Leslie Salvage has demonstrated any protected property interest in the amendment to the special use permit nor that any property right in the original special use permit includes the revised site plan.

Omaha Municipal Code § 55-885(b) states that "special permits shall be reviewed in accordance with the relevant criteria and standards set forth in table 55-885." However, Omaha Municipal Code § 55-884(a) states: "The special use permit procedure provides for extensive public review and discretionary city council approval . . .." Although the Omaha Municipal Code sets forth criteria for the City Council to use in evaluating a special

8

use permit, the approval is discretionary, and Leslie Salvage has not demonstrated it has a protected property interest in the amendment to the special use permit.

Neither has Leslie Salvage demonstrated that any property interest it has in the original special use permit includes the revised site plan. Leslie Salvage argues that submission of the revised site plan was nothing more than compliance with conditions of approval of the original special use permit and the City Council's approval should not have been required. Although Leslie Salvage may have been required to provide a revised site plan with respect to the fence requirement, it has not demonstrated that this condition in the special use permit contemplated Leslie Salvage submitting a revised site plan with altered means of access to the property.[4] Nothing in the Omaha Municipal Code required the planning director to approve the amendment to Leslie Salvage's original special use permit without submitting it to the City Council, even if the planning director may have had the power to do so.[5] Accordingly, Leslie Salvage has not shown that any property right it has in the original special use permit includes the revised site plan.

### 2. *Actions of Defendants*

---

[4] The condition that Leslie Salvage comply with a revised site plan was contained in the Planning Department's Recommendation Report which specifically discussed a revised site plan showing perimeter fencing. ECF No. 14-1, Page ID 161-162. The report was based on the initial site plan and dated August 31, 2016, Leslie Aff., ECF No. 14-1, Page ID 144-45. It was not until shortly before the October 17, 2016, Zoning Board public meeting that E&A Consulting learned the shared access agreement reflected in the initial site plan, did not exist. *Id.* at 146. The initial special use permit approved by the City Council stated that it was granted pursuant to the application submitted by Leslie Salvage and it was subject to conditions which mirrored those suggested by the Planning Department including, "[c]ompliance with the revised site plan." ECF 14-1, Page ID 202, 209.

[5] Omaha Municipal Code § 55-884(m) states that the planning director "may approve minor modifications in a special use permit if he/she determines that the modification does not affect findings relating to the criteria described in section 55-884(i) and section 55-885." However, "[s]ubstantial changes or modifications in the special use permit must be approved by the city council . . .." *Id.*

9

Even if Leslie Salvage could demonstrate a protected property interest, "[a] plaintiff asserting a substantive due process claim must establish that the government action complained of is 'truly irrational,' that is, 'something more than ... arbitrary, capricious, or in violation of state law.'" *Anderson v. Douglas Cty.,* 4 F.3d 574, 577 (8th Cir. 1993) (quoting *Chesterfield Development Corp. v. City of Chesterfield,* 963 F.2d 1102 (8th Cir.1992)). "To illustrate this heightened standard for substantive due process claims in the zoning context, the *Chesterfield* court gave as an example of such irrationality a zoning ordinance applying only to persons whose names begin with a letter in the first half of the alphabet. *Id.* (citing *Chesterfield,* 963 F.2d at 1104).

The three relevant actions here are (1) the actions of the City in refusing to issue the fence permit and certificate of occupancy, (2) the decision to require approval from the City Council of the revised site plan, and (3) the City Council's denial of the amendment to the special use permit.

The City refused to issue the fence permit and certificate of occupancy because Leslie Salvage did not follow the approved site plan. Pl. Br., ECF No. 13, Page ID 113, Leslie Aff., ECF No. 14-1, Page ID 150.

When the revised site plan was submitted to the Planning Department it no longer reflected shared access to the Orchard Property and the Q Street Property. Leslie Aff., ECF No. 14-1, Page ID 144, 150; Meng-Frecker Plan, ECF No. 14-1, Page ID 199. Omaha Municipal Code § 55-884(m) provides that "[s]ubstantial changes or modifications in the special use permit must be approved by the city council based on a recommendation from the planning board." The decision to submit the plan to the City Council for approval was made after internal planning board discussions and after

10

obtaining the advice of the City's legal department. Thus, the decision to require approval from the City Council of the revised site plan was made after careful consideration, was in accordance with Omaha Municipal Code § 55-884(m) and was not irrational.

Nor was the City Council's decision to deny the amendment to the special use permit irrational. At the public hearing, the City Council heard testimony from Dowd that an access agreement existed between the parties; that the revised site plan did not comply with this agreement; and that Dowd had concerns about placement of the fence. Second City Council Meeting Tr., ECF No. 14-2, Page ID 221-22. Regardless of whether an access agreement existed, the City Council's decision to deny the amendment to the special use permit based on Dowd's opposition was not irrational. *See Lemke v. Cass County,* 846 F.2d 469, 470-72 (8th Cir.1987) (*en banc*) (Arnold J., concurring). (The denial of a rezoning application where plaintiffs' theory of recovery was that their application was "denied mostly because the citizens [of Cass County] were offended by the transporting of Omaha, Douglas County, garbage into [a] Cass County landfill" was far from irrational.)

Accordingly, Leslie Salvage has not demonstrated it is likely to prevail on the merits of its substantive due process claim.

### *B. Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." "The Equal Protection Clause does not forbid classifications[,] [i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citing *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920)). "The Supreme Court recognizes an equal

protection claim for discrimination against a 'class of one.'" *Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir. 2005) *(*quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). A class-of-one claimant may prevail by showing he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Id.* Thus, to prevail Leslie Salvage must establish that it was similarly situated to other applicants for special use permits particularly with respect to the same general time. *Id.* (citing *Anderson,* 4 F.3d at 577).

Leslie Salvage alleges that, like it, each of the five entities named in the Amended Complaint submitted applications within the last five years to the Planning Department for special use permits to operate scrap and salvage services in areas zoned general industrial. Pl. Br., ECF No. 13, Page ID 127. Leslie Salvage alleges that each of the entities was required to comply with additional conditions for approval of its application and that many of the additional conditions placed on the other entities included submission of and compliance with a revised site plan. *Id.* Leslie Salvage argues that, unlike the other entities, it was unfairly required to seek additional approval of its revised site plan through the amendment of its special use permit. *Id.* Yet Leslie Salvage has not alleged that the site plans submitted by any of these five entities contained modifications beyond what was required or permitted by the City Council or Planning Department in the initial approval of the special use permits. Thus, Leslie Salvage has not demonstrated that any of these entities is similarly situated to it in *all relevant* respects, and the Court cannot conclude that Leslie Salvage is likely to prevail on its equal protection claim.

### C. Petition in Error

Defendants and Leslie Salvage all argue that the City Council exercised judicial functions when it denied the amendment to Leslie Salvage's special use permit. "Orders made in the *exercise of judicial functions* by a board or tribunal inferior to the district court are reviewable by proceedings in error." *Hawkins v. City of Omaha*, 627 N.W.2d 118, 127 (Neb. 2001) (emphasis in original) (citing *Emry v. Lake,* 149 N.W.2d 520 (Neb. 1967). "In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the decision rendered is supported by sufficient relevant evidence." [6] *In re Olmer*, 275 Neb. 852, 857–58 (Neb. 2008) (citing *Crown Products Co. v. City of Ralston,* 567 N.W.2d 294 (Neb. 1997)). "When making this determination, an appellate court is restricted to the record created before the lower tribunal." *Id.* Although the transcript of the City Council pre-hearing and public hearing have been submitted, it appears it is not the complete record as it does not include exhibits or documents referred to as being "in the record" during the hearing. ECF 14-2, Page ID 219-20. Thus, at this stage in the litigation, Leslie Salvage has not demonstrated it is likely to succeed on the merits of its petition in error.

This Court's jurisdiction to pass on the merits of Leslie Salvage's state-law claim would be derived from supplemental jurisdiction. As noted above, it does not appear that Leslie Salvage is likely to succeed on the merits of its substantive due process or equal protection claims. The Court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which is has original jurisdiction.

---

[6] Plaintiff cites *Hawkins* for the proposition that a trial de novo is required. However, *Hawkins* dealt with a case where the city council was not exercising judicial functions and, thus, the standard applicable to error proceedings did not apply. *Id.* at 127.

13

28 U.S.C. § 1367(c)(3). Accordingly, it is likely that the state law claim will be remanded to the District Court of Douglas County, Nebraska. Thus, Leslie Salvage is not likely to succeed on the petition in error in this Court.

For the reasons stated, the Court is not satisfied, at this stage, that Leslie Salvage is likely to succeed on the merits of any of its claims in this Court. Even if the other three factors were to weigh in favor of preliminary injunctive relief, the Court concludes that *Dataphase* factors do not favor issuance of a preliminary injunction.

## II. Dismissal of Federal Claims

Because this case is principally a zoning dispute and because Leslie Salvage's federal claims appear unlikely to succeed, the Court wishes to evaluate its jurisdiction at the earliest possible stage. "A federal court, after all, should not sit as a zoning board of appeals." *Chesterfield*, 963 F.2d at 1104. (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir. 1982) (internal quotation marks and citation omitted). In a case like this one, involving constitutional claims based on a denial of a conditional use permit, the Eighth Circuit opined "we think it would have been more appropriate for the federal district court, once rejecting the federal claims, to have exercised its discretion and not passed on the pendent claim." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). The court explained that this was "particularly true" where the principal question was zoning authority because "[t]hese issues clearly are not federal questions and are better left to the state courts to review." *Id.* The Eighth Circuit addressed the state law zoning dispute only out of judicial efficiency because of the late stage of the proceedings. *Id.*

To avoid the judicial efficiency dilemma in *Condor Corp.*, the parties are ordered to show cause as to why Leslie Salvage's federal claims should not be dismissed. "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 935 (8th Cir. 2015) (quoting Fed.R.Civ.P. 56(f)(3)). It appears from the evidence that the facts related to the federal claims are largely not in dispute. Thus, unless controverted by the parties, the facts identified in this Memorandum and Order[7] will be considered undisputed for purposes of considering summary judgment. The parties are ordered to present their objections to the facts stated in this Memorandum and Order, as well as any additional evidence or arguments in support of or in opposition to a grant of summary judgment, in favor of Defendants, on Leslie Salvage's substantive due process and equal protection claims.

IT IS ORDERED:

1. The Motion for Issuance of Preliminary Mandatory Injunction, ECF No. 11, filed by Plaintiff Leslie Salvage, Inc., is denied;

2. The Motion for Oral Argument and Evidentiary Hearing on Plaintiff's Motion for Preliminary Injunction filed by Plaintiff Leslie Salvage, Inc., ECF No. 21, is denied; and

3. On or before April 8, 2019, the parties will present any objections to the facts set forth herein, and any additional evidence or arguments in support

---

[7] This includes the facts in both the Background and Discussion sections.

of or in opposition to a grant of summary judgment in favor of Defendants on Plaintiff's federal claims.

Dated this 8th day of March 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge